## Theus v. Dugger.

### (*Jackson.* June 15, 1893.)

1. MARRIED WOMAN. *Not personally liable upon firm note.*

Personal judgment cannot be obtained against a married woman, over her plea of coverture, upon a note executed by a firm of which she is a member. (*Post, pp. 46, 50.*)

2. SAME. *Method of charging her separate estate.*

A married woman's separate estate cannot be charged with her debts unless she has entered into an express contract that it shall be bound for the particular debt. It cannot be so charged by mere implication. (*Post, p. 47.*)

Cases cited and approved: Jordan *v.* Keeble, 85 Tenn., 412; Chatterton *v.* Young, 2 Tenn. Ch., 768; Ragsdale *v.* Gossett, 2 Lea, 739; Litton *v.* Baldwin, 8 Hum., 209; Cherry *v.* Clements, 10 Hum., 552; Kirby *v.* Miller, 4 Cold., 3; Shacklett *v.* Polk, 4 Heis., 115.

3. SAME. *Same. Example.*

A married woman's separate estate, embarked by her in a mercantile business, as partner with another, cannot be subjected to the payment of a note executed by the firm in due course of the partnership business, in the absence of an express contract on her part to that effect. (*Post, pp. 46–50.*)

Cases cited and approved: Federlicht *v.* Glass, 13 Lea, 481; Frank *v.* Anderson, 13 Lea, 695; Chatterton *v.* Young, 2 Tenn. Ch., 768; Jackson *v.* Rutledge, 3 Lea, 626.

---

### FROM MADISON.

---

Appeal from Chancery Court of Madison County. A. G. HAWKINS, Ch.

McCorry & Bond and Caruthers & Mallory for Theus.

Haynes & Hays for Dugger.

Wilkes, J.   The bill is filed by John W. Theus, trustee of the Bank of Madison, which failed September 27, 1890, to collect a note of $2,230.25, executed by the late firm of W. A. Dugger & Co., composed of W. A. Dugger and Sallie T. Dugger, wife of A. D. Dugger, to the Bank of Madison, and also against Jesse A. Thompson, to set aside, as fraudulent, an alleged sale of the interest of W. A. Dugger in said firm, to Jesse A. Thompson, on the ground that it was made to hinder, delay, defraud, and defeat complainant and the other creditors of the firm of W. A. Dugger & Co. in the collection of their debts.

The note sued on is an ordinary promissory note, providing for the payment of reasonable attorney's fees in case of suit, and is signed "W. A. Dugger & Co."

An attachment was issued, commanding the Sheriff "to attach as much of the estate and interest of the said S. T. Dugger in said partnership property, consisting of a stock of groceries," etc., as would satisfy complainant's debt and costs; and the attachment was levied upon the "entire undivided interest of the defendant, S. T. Dugger, in the stock of goods in possession of J. A. Thompson & Co." A replevy bond was executed.

The firm of W. A. Dugger & Co. was dissolved October 8, 1892, W. A. Dugger selling his entire interest to his co-defendant and partner, Sallie T. Dugger, notice of the dissolution being published in the Jackson papers; and, thereupon, Sallie T. Dugger formed a partnership with Jesse A. Thompson, under the style of J. A. Thompson & Co., the said Thompson buying an undivided half-interest in the stock of goods, but no interest in the notes, accounts, and choses in action of the late firm of W. A. Dugger & Co. The trade thus made had been in negotiation for six months before the bank failure, and the president of the Bank of Madison had been advised with concerning the same.

A motion to quash the attachment was made, on the hearing, first, because there is no valid or legal ground for the issuance of the same stated or set forth in the bill; second, because there is no allegation in the bill of any legal or valid or subsisting lien, in complainant's favor, upon the stock of goods of said J. A. Thompson & Co., or the interest of S. T. Dugger therein; third, because no, valid or sufficient grounds for an attachment are stated, set forth, or shown in the bill. This motion was overruled.

A demurrer was interposed by defendants, Sallie T. Dugger and husband, A. D. Dugger, upon the following grounds:

1. The bill does not state a case that entitles complainant to the relief prayed.

2. The defendant, S. T. Dugger, as shown by the bill, is a married woman, under the disability of coverture, and, as such, is not liable on the promissory note sued on, and she sets up her coverture as a complete defense against liability on said note.

3. To the part of the bill which seeks a personal recovery against defendant, S. T. Dugger, she demurs on the following ground : She is, as shown by the bill, under the disability of coverture, and is not liable on the said note, as the same is stated and alleged in the bill, because it is not shown to have been executed by her with express reference to her separate estate, or that, in fact, she has any separate estate.

4. To so much and such parts of the bill as allege her ownership in the stock of goods sought to be attached by the bill, and seeks to reach the same for the satisfaction of the debt sued on, she demurs on the following ground: She, as shown by the bill, is a married woman ; not shown to have any separate estate in the goods, nor to have contracted the alleged indebtedness with express reference thereto ; wherefore, her interest in the same cannot, in the manner sought by the bill, be sold or made liable for the said indebtedness.

The first ground of demurrer was overruled, and the second and third grounds, to the effect that S. T. Dugger, as shown by the bill to be a married woman, under the disability of coverture, and,

as such, not liable on the promissory note sued on, was allowed so as to prevent any decree on said note against said S. T. Dugger personally.

Answers were filed by defendants denying all fraud in the sale and purchase of the stock of goods, and alleging that, while W. A. Dugger sold out his entire interest in the stock, notes, accounts, choses in action, fixtures, delivery-wagon and horse to his co-defendant, S. T. Dugger, that co defendant J. A. Thompson only bought an interest in the stock and fixtures.

Proof was taken and decree rendered, in which it was adjudged that there was no fraud in the sale of the goods to J. A. Thompson, and that no personal decree could be entered against Mrs. Dugger on said note, but that "the interest of said S. T. Dugger acquired by the investment of her separate estate in said firm is liable to complainant, on account of said indebtedness, and should be subjected to its payment;" and thereupon the Court proceeded to render a personal decree against her and her sureties upon the replevin bond for the sum of $4,460.50, being double the penalty thereof, but to be discharged by the payment of the sum of $1,815.36, the balance due on the note sued on.

The question of the alleged fraudulent sale of the stock of goods, and its purchase by J. A. Thompson, and which was the ground laid in the bill for the issuance of the attachment, was abandoned when complainant had the attachment is-

sued, it being only issued against the "undivided interest of the defendant, S. T. Dugger, in the stock of goods," and the Chancellor found as a fact, and so adjudged in the decree, "that the allegations of fraud in purchasing the stock of goods on the part of J. A. Thompson, and the sale thereof by the said S. T. Dugger, had not been proven, but disproved," and there is no appeal by complainants from this portion of the decree.

Several errors are assigned, only one of which we deem it necessary to notice, as it disposes of the entire matters in controversy.

The question raised by this assignment is in substance this: Is a married woman, owning a separate estate, which she has put into a mercantile business, as a partner with another person, bound by a note executed for partnership purposes in the name of the firm, so that a personal judgment can be rendered against her on such note, or so that the stock of goods belonging to the firm in which she is interested as a partner, can be subjected to the payment of such firm note in the absence of an express agreement on the part of the married woman that the stock of goods in which her separate estate is invested shall be bound for the same?

It has been held that when a married woman engages in business, if she fails to pay a debt incurred by her in that business, the creditor may seize and reclaim such goods as he has sold to

her as may remain in her possession, provided the same can be identified. *Federlicht* v. *Glass and wife.* 13 Lea, 487, 488.

It also has been held that land purchased by a married woman, in which her separate estate has been invested, leaving a portion of the purchase-money unpaid, may be sold to enforce collection of that portion of the purchase-money remaining unpaid. *Jackson* v. *Rutledge*, 3 Lea, 626, 629, 631, But in each of these cases no personal judgment was rendered against the married woman, and the only relief given was against the identical property in the purchase of which the debt was created.

The law is well settled in Tennessee that, in order to bind the separate estate of a married woman, there must be an express agreement or contract binding the same; *it cannot be charged by implication.* *Jordan* v. *Keeble,* 1 Pickle, 412; *Chatterton* v. *Young,* 2 Tenn. Ch., 768; *Ragsdale* v. *Gossett,* 2 Lea, 739; *Litton* v. *Baldwin,* 8 Hum., 209; *Cherry* v. *Clements,* 10 Hum., 552; *Kirby* v. *Miller,* 4 Cold., 3; *Shacklett* v. *Polk,* 4 Heis., 115.

It is earnestly insisted, however, that when a married woman engages in mercantile business on her own account, or as a partner, and uses her separate estate therefor, she thereby expressly binds her stock of goods and mercantile assets as fully as if she should, by express words, stipulate with each creditor with whom she deals that such stock and assets shall be so bound, and that such ruling does not conflict with our previous holdings that

there must be an express agreement on the part of the married woman, in order to make a charge upon her separate estate.

It is earnestly insisted that this must be so, more especially in cases where the married woman enters into a partnership, because a legal entity is thereby created which has assets primarily liable for its own debts. It is also urged that, to allow a married woman, under such circumstances, to escape liability, both personally and as to her estate, would be a fraud upon her creditors on the one hand, and, on the other, prevent her from obtaining and enjoying that credit necessary to the successful operation of a mercantile business.

We feel the force and weight of these suggestions; but we are of opinion that if we hold a married woman bound by contracts made by her in her business or mercantile ventures simply because she is so engaged, and has a separate estate invested in them, we must do so on the ground that she is bound *by implication of law* rather than upon any *express agreement or contract.*

It would be to · lay down a rule for married women engaged in merchandising upon their separate estates different from that laid down in cases where her separate estate is invested or employed in other business or property, and we can see no sound basis for such distinction.

As the law has heretofore been held, and is now laid down, if a married woman, having a separate estate, employ it in mercantile business,

any creditor, in order to bind her separate estate engaged in such business, need only stipulate with her to that effect. With this simple precaution, the creditor may deal safely with the married woman, and, at the same time, her credit will not only not be impaired, but may be strengthened by the consideration that an express charge has made the creditor feel more secure in extending credit to her.

This is the rule applied in all other cases involving the separate estates of married women, and we think it safer to leave the rule uniform in its application, rather than create distinctions which we cannot rest on any satisfactory basis. This holding is strictly in accord with the previous rulings of this Court upon this subject. *Federlicht* v. *Glass*, 13 Lea, 481; *Frank* v. *Anderson*, 13 Lea, 695; *Chatterton* v. *Young*, 2 Tenn. Ch., 768.

In the case at bar, the note sued on was signed W. A. Dugger & Co., but did not purport to charge the separate estate of Sallie T. Dugger, nor was there any parol evidence that this separate estate or stock of goods was agreed to be bound for its payment.

The note was given, not for the purchase of goods, but in the general conduct of the business of the firm. The goods sought to be subjected to its payment were not the goods of W. A. Dugger & Co. (fraud in the transfer being eliminated), but it was the interest of Sallie T. Dugger in the new firm that was sought to be reached.

4—9 p

The Chancellor declined to give any personal judgment against Sallie T. Dugger, the married woman, and in this he was correct. It was error, however, to give any decree against the interest of Sallie T. Dugger in the firm assets of J. A. Thompson & Co., or against the goods as the property of W. A. Dugger & Co., or against the parties upon the bond given to replevy the same, and the decree of the Court below in these particulars is reversed with costs.

DISSENTING OPINION.

SNODGRASS, J.  I do not agree with the majority in conclusion reached, but am of opinion that a married woman, engaging in a mercantile business on a separate estate, or in a partership in which she is using such estate, and thus holding herself out to all as so trading, expressly binds that separate estate to every creditor who deals with her in that business.  The condition of the business is an advertisement and holding out to the public, and therefore an invitation to each member of the public to deal with her upon the faith of such separate estate, and, consequently, each contract she makes in that business binds her separate estate as an express contract to do so.  The contrary

rule results from considering only the words used in each separate contract with each creditor, and ignoring the conditions under which the words were used. The conditions, the business, the dealing in and only with a separate estate, and the holding· out to each creditor, as to all, that such was the business in which he was invited to enter and deal, are all to be considered in connection with, and as essential parts of, each contract; and, thus considered, they supplement the words used, and make out an express contract, or, rather, make what would not, in the absence of these conditions and propositions to the public (and therefore to each member of it), have been a contract to bind a separate estate, in fact as in legal effect such a contract, just as in the case of a partnership holding itself out as such. The contract of each member, in the legal scope of and for that business, binds the firm, though no express words are used proposing to do so.

We have held that a married· woman may carry on a mercantile business as a separate estate, and that such business is protected from her husband's creditors. We ought, therefore, not to hold, it seems to me, that it is also protected from her own. Both in her interest and that of the pub· lic dealing with her, I think the property invested in such business should be bound.

The thirteenth Lea case, I believe, applied the correct rule of law to facts not calling for the application. The facts of that case have therefore

made a precedent which, I think, should be overruled, and the doctrine established that a married woman doing business with the public on the faith and credit of investment of her separate estate, and holding herself out as so dealing, binds her separate estate expressly in every contract made in the scope and for the objects of that business, though she does not then and there, in making each business contract, repeat such terms as expressly binds the separate estate.